UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| WILLIAM LAUGHTON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 1:23-CV-35-HAB |
| MARTIN J. O'MALLEY, Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) |

**OPINION AND ORDER**

This matter comes before the Court on Plaintiff William Laughton's ("Laughton") appeal of the Social Security Administration's Decision dated June 14, 2022 (the "Decision"). Laughton filed his Complaint against the Commissioner of Social Security (ECF No. 1) on January 25, 2023. Laughton filed his Opening Brief (ECF No. 17) on July 31, 2023. Defendant Martin J. O'Malley, Commissioner of the Social Security Administration (the "Commissioner"), filed his Memorandum in Support of Commissioner's Decision (ECF No. 23) on November 7, 2023. Laughton filed his reply (ECF No, 26) on December 11, 2023. This matter is now ripe for determination.

**ANALYSIS**

*Standard of Review*

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. This Court must affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla of proof." *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001). It means "evidence a reasonable person would accept as adequate to support the decision*." Murphy v. Astrue*, 496 F.3d 630, 633 (7th Cir. 2007);

*see also Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation and quotations omitted). In determining whether there is substantial evidence, the Court reviews the entire record. *Kepple*, 268 F.3d at 516. However, review is deferential. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). A reviewing court will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (quoting *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)). Nonetheless, if, after a "critical review of the evidence," the ALJ's decision "lacks evidentiary support or an adequate discussion of the issues," this Court will not affirm it. *Lopez*, 336 F.3d at 539 (citations omitted).

While the ALJ need not discuss every piece of evidence in the record, he "must build an accurate and logical bridge from the evidence to [the] conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Further, the ALJ "may not select and discuss only that evidence that favors his ultimate conclusion," *Diaz*, 55 F.3d at 308, but "must confront the evidence that does not support his conclusion and explain why it was rejected," *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Ultimately, the ALJ must "sufficiently articulate his assessment of the evidence to assure" the court that he "considered the important evidence" and to enable the court "to trace the path of the ALJ's reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) (internal quotation marks omitted)).

***The ALJ's Decision***

A person suffering from a disability that renders him unable to work may apply to the Social Security Administration for disability benefits. *See* 42 U.S.C. § 423(d)(1)(A) (defining

disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). To be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but also any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. § 423(d)(2)(A). If a claimant's application is denied initially and on reconsideration, he may request a hearing before an ALJ. *See* 42 U.S.C. § 405(b)(1). An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits: (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether he has the residual functional capacity to perform his past relevant work, and (5) whether the claimant is capable of performing any work in the national economy. *See* 20 C.F.R. § 404.1520(a*); Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). If step four is answered in the affirmative, the inquiry stops and the claimant is found to be not disabled. If step four is answered in the negative, the ALJ proceeds to step five.

      Here, the ALJ found that Laughton met the insured status requirements of the Social Security Act through December 31, 2026.  At step one, the ALJ found that Laughton did not engage in substantial gainful activity since May 29, 2020, the alleged onset date. At step two, the ALJ determined that Laughton had the following severe impairments: status post placement of pacemaker, bipolar disorder, attention deficit hyperactivity disorder, history of paroxysmal atrial fibrillation, sacroiliitis, and depression. The ALJ further found that Laughton has the non-severe impairments of alcohol use disorder, left elbow tendinosis with partial bicep tendon tear, and knee

pain.

At step three, the ALJ found that Laughton did not have "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)"." (R. 19). At step four, the ALJ found that Laughton had the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except the claimant can never climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs; can occasionally balance, stoop, kneel, crouch, and crawl; should avoid unprotected heights and dangerous moving machinery with unprotected moving mechanical parts; should avoid a very loud work environment; must avoid concentrated exposure to extreme cold; should avoid exposure to electromagnetic waves; can perform work involving simple instructions and routine, repetitive tasks (defined as tasks and instructions that can be learned through short demonstration, up to and including one month); can never perform work requiring a specific production rate, such as assembly-line work; can meet production requirements that allow a flexible and goal-oriented pace; can maintain the focus, persistence, concentration, pace, and attention to engage in such tasks for two-hour increments, for eight-hour workdays, within the confines of normal work breaks and lunch periods; can make simple, work-related decisions; can deal with changes in a routine work setting; could tolerate at least brief and superficial interaction with supervisors, coworkers, and the general public (defined as occasional and causal contact with no prolonged conversations) but contact with supervisors still includes what is necessary for general instruction, task completion, or training.

(R. 22).

Also at step four, the ALJ found that Laughton is unable to perform any past relevant work. However, at step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Laughton can perform. Thus, the ALJ ruled that Laughton was not disabled, as defined in the Social Security Act.

### *The ALJ's Assessment of Laughton's RFC*

In support of remand, Laughton first argues that the ALJ erred in the RFC assessment.

Specifically, Laughton contends that the ALJ erred in weighing the evidence related to his ability to maintain attention and concentration. During the hearing, Laughton testified that his bipolar disorder prevents him from being able to work consistently due to episodes of mania and deep depression. (R. 48). Laughton admitted to struggling with stress and change, as well as having difficulties with hygiene and staying on task. (R. 259, 52, 50). His wife supported his claims, stating that Laughton avoids shopping and has difficulty focusing for long periods, especially when he is in a manic state. (R. 247-250). She also mentioned his poor stress management skills. (Tr. 249).

The ALJ reviewed Laughton's medical records, including assessments by agency physicians Dr. B. Whitey, M.D., a medical consultant, Dr. S. Hill, Ph.D., a reviewing psychological consultant, Dr. William Shipley, Ph.D., a reviewing psychological consultant, and Dr. Dan Boen, Ph.D., an examining psychological consultant. (R. 27-28). The ALJ found the opinions of Dr. Whitley and Dr. Boen to be inconsistent with the evidence and not persuasive. (Tr. 27-28). However, the ALJ gave some weight to the opinions of Dr. Hill and Dr. Shipley, finding their opinions "not fully persuasive" but giving them some credibility. (R. 28). Laughton contends that the ALJ did not rely on any medical opinion when determining his RFC, thereby creating an "evidentiary deficit" that was improperly filled by the ALJ playing doctor and interpreting the medical records herself.

Dr. Boen's assessment of Laughton indicated that his concentration and short-term memory were significantly below normal. (R. 758). Furthermore, his judgment was moderately below normal. *Id*. Dr. Boen opined that Laughton would struggle with remembering tasks, maintaining concentration, staying on task, getting along with coworkers, and getting along with a boss. (R. 759). However, the ALJ concluded that Laughton was capable of maintaining focus, persistence,

concentration, pace, and attention for two-hour increments, for eight-hour workdays. (R. 22). The ALJ pointed out that while some treatment notes showed below-average concentration, Laughton exhibited normal concentration on March 10, 2021 (Exhibit B11F, at 16), June 10, 2021 (B19F, at 45) and on October 14, 2021 (Exhibit B19F, at 40). The ALJ also reasoned that if Laughton had more than moderate limitations, he would not be able to complete household chores, which he indicated he was able to do. (R. 20). The ALJ declined to give weight to Dr. Boen's opinions, holding that they were not supported by the record evidence. The ALJ mentioned that treatment notes indicated no memory deficits and either normal or below-average attention and concentration. (R. 28).

Dr. Hill opined that Laughton had a moderate limitation in concentrating, persisting, or maintaining pace and mild limitations in the other areas of the paragraph "B" criteria set forth in Listings 12.04 and 12.11(*i.e.*, understanding, remembering or applying information; interacting with others; adapting or managing oneself). Dr. Shipley affirmed Dr. Hill's opinions. The ALJ held that these opinions were not fully consistent with the evidence and that the evidence supported more than a mild limitation in adapting and managing oneself but did not show more than moderate impairment. (R. 28).

Laughton, however, argues that there are multiple instances in the record where memory deficits are noted, contrary to the ALJ's conclusion. (R. 671, 1017). Laughton further claims that there are ten instances of below-average concentration and two instances noting a problem with concentration. (Citing to R. 662, 671, 689, 697, 777, 781, 998, 1002, 1008, 1017, 1035, 1043). Laughton contends that these notations outweigh the few treatment notes of normal concentration and that it was improper for the ALJ to selectively choose evidence that supports her determination while disregarding contradictory evidence.

The Commissioner points out, however, that it is the responsibility of the ALJ to determine the RFC based on the evidentiary record, as outlined in 20 C.F.R. § 404.1546(c). The Commissioner further notes that the ALJ's RFC assessment was consistent with the opinions of both the State Agency reviewers and Dr. Boen. That is, the State Agency reviewers opined that Laughton had the mental capacity to understand, remember, and carry out detailed tasks, maintain superficial relationships with co-workers and supervisors, and manage the stresses associated with work-related tasks. The ALJ, after considering subsequent evidence, found that Laughton's mental limitations warranted a slightly more restrictive RFC.

With respect to Dr. Boen's opinions, it was noted that Laughton would have difficulty remembering job instructions and would struggle with concentration and staying on task. The ALJ took these limitations into account and restricted Laughton to work involving simple instructions, routine tasks, and a flexible and goal-oriented pace. Additionally, Dr. Boen expressed concerns about Laughton's ability to get along with co-workers and supervisors. Thus, the ALJ limited Laughton to only brief and superficial interactions with supervisors, co-workers, and the public.

The Commissioner claims that Laughton fails to demonstrate how the ALJ's RFC determination is inconsistent with Dr. Boen's observations. Dr. Boen did not provide specific limitations beyond stating that Laughton would have trouble with certain tasks. Moreover, Laughton does not present evidence supporting greater limitations that the ALJ failed to consider. Although Laughton claims that the evidence shows he has "significant concentration and memory deficits" such that he would not be able to maintain attention for two-hour increments as provided for in the RFC, there is no medical record to support this. Dr. Boen opined that Laughton's concentration and short-term memory were "significantly below normal" (R. 758), but did not place a time-frame for his ability to concentrate. Further, as the ALJ noted, Laughton's daily

activities, such as doing chores, shopping, and socializing, support an ability to maintain concentration.

With respect to Laughton's argument that the ALJ misinterpreted the evidentiary record, the Commissioner contends that this assertion is misguided. For instance, Laughton claims that there were multiple references to his memory deficits in the record, but he provides only two duplicative pages from December 2, 2019, which were nearly six months before his alleged onset date. Furthermore, Laughton alleges that the ALJ relied on only one instance of normal concentration in the record, compared to twelve instances of below-average concentration or an undefined "problem exists." However, he misreads the record, as the twelve evidentiary references actually amount to six due to duplicate records, and only three of them are within the relevant period after his alleged onset date. Additionally, there were three instances of normal concentration within the relevant period (not one), which the ALJ appropriately cited.

Laughton relies on *Boyles v. Commissioner of Social Security*, Cause No. 1:21CV-442-JD (N.D. Ind. Nov. 1, 2022), for the proposition that an evidentiary deficit is created when an ALJ finds all of the consulting and reviewing physicians' opinions not persuasive.  However, *Boyles* is inapposite as the ALJ in that case failed to discuss the persuasiveness of a consulting physician's opinion.  Here, the ALJ discussed the weight to give to the opinions and did not ignore them and, in fact, gave partial weight to two of the reviewing consultants' opinions.  Laughton also cites to *Suide v. Astrue*, 371 F. App'x 684 (7th Cir. 2010).  The relevant portion of *Suide* states:

> But it is not the ALJ's evaluation of Dr. Orris' reports that requires a remand in this case. Even assuming that Dr. Orris's opinions did not deserve greater weight, it is the evidentiary deficit left by the ALJ's rejection of his reports — not the decision itself — that is troubling. The rest of the record simply does not support the parameters included in the ALJ's residual functional capacity determination, such as an ability to "stand or walk for six hours" in a typical work day. Without Dr. Orris's opinions, Dr. Palacci's evaluation and the notes from Suide's physical-therapy sessions and her visits to other specialists are all that remain of the post-stroke

medical records. The ALJ, however, did not discuss what weight was given to any of these reports.

*Id*. at 689-90.

Thus, there is not an evidentiary deficit simply because an ALJ rejects the opinions of the agency reviewing and consulting physicians. Rather, the question is whether the rest of the record supports the ALJ's RFC assessment. Notably, in this case, the ALJ did not flat-out reject all of the opinions. With respect to the opinions of Dr. Hill and Dr. Shipley, PhD., the ALJ stated that she did not find the opinions "fully persuasive". The ALJ noted that the consultants did not cite evidence in support of their opinions and that the opinions are not fully consistent with the evidence. (R. 28). However, the ALJ reviewed and weighed the evidence in this case, including Laughton's function reports, his testimony at the hearing, the medical evidence provided by his treating doctors, and the opinions of agency reviewing and consulting doctors. The ALJ then assessed Laughton's RFC, determined that he could perform a restricted range of light work, and found him to be not disabled. Laughton has essentially asked this Court to re-weigh the evidence, which is beyond the scope of this Court's permitted review. The ALJ's RFC determination for Laughton was based on his impairments and credible limitations. The ALJ limited him to a very restricted range of light work, which includes specific limitations on physical activities and work environments. The ALJ's decision is supported by substantial evidence and logical reasoning. The ALJ fulfilled her duty to resolve conflicts in the medical evidence and properly considered the opinions of the State Agency reviewers and Dr. Boen. The ALJ's assessment of Laughton's RFC was well-articulated and supported by substantial evidence. Thus, there is no basis for remand on this issue.

*Vocational Expert Testimony*

Laughton argues that the ALJ improperly relied on unsupported vocational expert (VE) testimony regarding the number of jobs he could perform given his vocational profile and RFC. As noted above, at step five of the disability evaluation, the ALJ determined that there were a significant number of jobs that Laughton could perform. The VE's testimony explained that Laughton would be able to work as a marker, cafeteria attendant, and cleaner, with a combined total of nearly 400,000 jobs nationally.

Laughton's objection focuses on the methodology used by the VE to estimate the job numbers, suggesting that it may not be entirely accurate. The VE explained that he used a program called Job Browser with SkillTRAN, which uses data from the Bureau of Labor Statistics to identify industries with the most frequent occurrence of certain jobs. The VE also stated that other vocational experts use the same method. Laughton argues that the VE did not provide a thorough explanation of his methodology and failed to provide a reasoned response. However, the agency's regulations do not require a precise count of job numbers, as long as the method used is supported by evidence that provides some confidence in its reliability. *Chavez v. Berryhill*, 895 F.3d 962, 969 (7th Cir. 2018); 20 C.F.R. § 404.1560(c). Clearly, the VE's testimony, based on a commonly used method among vocational experts, provides some confidence in its reliability. *Bruno v. Saul*, 817 F.Appx 238, 243 (7th Cir. 2020); *Wilcox v. Comm'r of Soc. Sec.,* No. 1:22cv187-SLC, 2023 WL 6364358 (N.D. Ind. Sept. 29, 2023). At the hearing, the ALJ overruled Laughton's objection, noting that the VE's testimony was based on a specific methodology designed to reliably determine job numbers for someone with Laughton's vocational profile and RFC.

According to the Seventh Circuit, as long as the VE provides sufficient detail about the sources of data and the general process used, their testimony is considered reliable. *Fetting v.*

*Kijakazi*, 62 F.4th 332, 339 (7th Cir. 2023). Laughton claims that the VE's testimony is unreliable merely because the VE did not know the mathematical equation that was used in the SkillTRAN software. Nowhere does Laughton explain why, even if the VE knew the mathematical equation, that this would somehow make the job numbers provided by the VE more accurate or reliable. Laughton has not produced the mathematical equation nor provided any evidence that the equation used was producing unreliable results.

It is important to reiterate that ALJs use vocational expert testimony to determine whether there is a significant number of jobs that a claimant can perform, rather than determining the exact number of jobs. The goal is to determine if there are significant numbers of jobs available and to ensure that the jobs are not isolated. Even if the VE's explanation does not satisfy Laughton, the job numbers and explanation provided by the VE still constitute more than a mere scintilla of evidence to support the step five findings. The VE's testimony, combined with his years of experience and reliance on a recognized source of data, provides substantial evidence to support the ALJ's decision. Thus there is no basis for remand and the Decision of the Commissioner will be affirmed.

## CONCLUSION

For the reasons set forth above, the Decision of the Commissioner is hereby AFFIRMED. The Clerk is DIRECTED to enter judgment in favor of Defendant and against Plaintiff.

SO ORDERED on February 22, 2024.

                                                 s/ Holly A. Brady
                                                 HOLLY A. BRADY, CHIEF JUDGE
                                                 UNITED STATES DISTRICT COURT